KAUFMANN *v.* MILLIES ET AL.

[No. 15,911.  Filed February 8, 1939.  Rehearing denied March 22, 1939.  Transfer denied June 1, 1939.]

*Crumpacker & Friedrich, Bernard A. Petrie, Fred-*

*erick C. Crumpacker, Jr.,* and *Stanley A. Tweedle,* for appellant.

*Carl A. Huebner, Galvin, Galvin & Leeney, T. P. Galvin, Fred Malo,* and *A. G. Huebner,* for appellees.

DUDINE, J.—The facts involved in the controversy between the parties to this cause were found specially by the court below, and so far as the facts are material for the purpose of a determination of this appeal, they are substantially as follows:

"(2) That on the 26th day of June, 1926, and continuously thereafter, until the 2nd day of February, 1931, the defendant, First Trust & Savings Bank of Hammond, Indiana, was a banking corporation, organized and existing under and by virtue of the laws of the State of Indiana, providing for the organization of loan and trust and savings deposit companies, and carried on a general bank and trust company business during the said period, with its said offices located in the City of Hammond, Lake County, Indiana. That on the said 2nd day of February, 1931, the said First Trust & Savings Bank of Hammond, Indiana, closed its doors, and suspended business, and on said date, was placed in the hands of the banking department of the State of Indiana; that . . . the said Harry E. Folk is now the duly appointed, qualified and acting Receiver of the said First Trust & Savings Bank of Hammond, Indiana."

On June 26, 1926, Approved Investment Company, a corporation, executed and delivered to the First Trust & Savings Bank of Hammond, Indiana (which bank will hereinafter be referred to as "bank"), its certain mortgage bonds in the aggregate principal sum of thirty-five thousand ($35,000.00) dollars, made payable to the order of said bank *or bearer,* each of said bonds to become due June 26, 1931. Interest coupons were attached to each of said bonds.

On the same date, June 26, 1926, said Approved Investment Company executed and delivered to said bank

a mortgage on Lots Four (4) and Five (5) in Block Six (6) of Towle and Young's Addition to the City of Hammond (which real estate shall hereinafter be referred to as plot one (1) to secure the payment of said bonds. This mortgage was recorded in the office of the Recorder of Lake County, Indiana on July 12, 1926.

Upon the delivery of said mortgage bonds and mortgage to the bank, the bank *"paid"* to said Approved Investment Company the sum of thirty-five thousand ($35,000.00) dollars.

Subsequent to June 26, 1926, and from time to time prior to November 1, 1929, the bank sold $22,000 (principal) of said bonds to appellant Clara Kaufmann, and $11,000.00 (Principal) to various persons, whom we shall hereinafter refer to as the Thum group.

The bank also sold $2,000.00 (principal) of said mortgage bonds to Frank S. Betz, which bonds were thereafter paid off by the Approved Investment Company, and hence are not involved in this litigation.

Appellant and the Thum group were the owners of said bonds in the aggregate sum of $33,000.00 at the time of the trial court's decision.

Carl Kaufmann, husband of appellant, Clara Kaufmann, had on a number of occasions prior to September 1, 1929, acted for and on behalf of his wife with respect to said $22,000.00 bonds purchased by her and *"was the agent* of said Clara Kaufmann with authority to act for said Clara Kaufmann concerning said investment."

During the year 1929 and subsequent thereto, until February 2, 1931, Carl Kaufmann was a director of said bank and a member of its finance committee.

The court found,

"(9) That during the year of 1929, the principal stockholder of the defendant, Approved Investment Company, a corporation, was a certain Eben N. Bunnell; that said Eben N. Bunnell was President of said Approved Investment Company during the

year 1929; that the said Eben N. Bunnell was engaged in business during the year 1929, and for a number of years prior thereto, in the Cities of Hammond, East Chicago and Gary, Indiana, in the retail automobile business, and operated and conducted in each of said cities, an automobile sales room and repair garage, as a dealer in the automobiles of the Ford Motor Company; that prior to the first day of December, 1929, the place of business of the said Eben N. Bunnell in Hammond, Indiana, was located in a building in the said City of Hammond, on Hohman Street, North of a point where said Hohman Street is intersected by multiple Railroad right-of-ways; (which premises will herein be referred to as plot two [2]) that during the year 1929 and for a number of years prior thereto, the said Eben N. Bunnell had transacted numerous financial matters with the said First Trust & Savings Bank of Hammond, Indiana, with respect to his various business enterprises, and prior to November 1st, 1929, the said Eben N. Bunnell, and certain corporations in which he was the largest stockholder, were indebted to the First Trust & Savings Bank of Hammond, Indiana, for considerable and substantial sums of money; that during the year 1929, certain agents or representatives of the Ford Motor Company, threatened to cancel the agency contract then existing between the said Eben N. Bunnell and the said Ford Motor Company, unless the sales rooms, offices and garage of the said Eben N. Bunnell, within the City of Hammond, Indiana, was moved to a more desirable location within better equipped, and larger quarters; that the said Eben N. Bunnell informed the officers of the First Trust & Savings Bank of Hammond, Indiana, of the threats and demands of the said representatives and agents of the Ford Motor Company, in the spring of the year, 1929, and requesting the said bank to consider financing the erection of a building upon . . . (plot two [2])."

"(14)   That on the first day of September, 1929, the defendant, Approved Investment Company, made a written application for a mortgage loan of One Hundred Twenty-five Thousand ($125,000.00) Dollars, of said First Trust & Savings Bank of Hammond, Indiana, which application was discussed and considered at two meetings of the

Finance Committee of said First Trust & Savings Bank of which the cross-complainant, Carl Kaufmann, was a member, and present; that at the second of said meetings, in the presence of the cross-complainant, Carl Kaufmann, the said application of the said Approved Investment Company, for a mortgage loan of the sum of One Hundred Twenty-five Thousand ($125,000.00) Dollars, was approved, the funds so loaned, to be used for the purpose of retiring and paying the then outstanding mortgage of the Approved Investment Company, dated June 26th, 1926, in the principal sum of Thirty-five Thousand ($35,000.00) Dollars, and for the purpose of erecting a two (2) story concrete automobile sales office and garage building upon (plot two [2]), which funds so to be loaned to the said Approved Investment Company, were to be disbursed and paid by the said First Trust & Savings Bank of Hammond, Indiana, as the work upon the said building so to be erected, progressed, upon presentation of the certificates of L. Cosby Bernard, the architect for said building; and that on the 20th day of September, 1929, the Biggs Construction Company, and Joseph H. Salyer, contractors, commenced the erection of a two-story concrete automobile sales office and garage building, upon (plot two [2]), pursuant to articles of agreement, dated September 20th, 1929, and September 25th, 1929, respectively, providing for the erection of said building, at a cost of: Ninety Thousand no/100 ($90,000) Dollars."

On the first day of November, 1929, Approved Investment Company made, executed and delivered to the bank mortgage bonds in the aggregate sum of one hundred twenty-five thousand ($125,000.00) dollars, each dated November 1, 1929, payable to the order of said bank *or bearer* payable in series, the first series to become payable two years after date (Nov. 1, 1931, five months after the maturity date of the 1926 bond issue). To each of these bonds interest coupons were attached, all of which interest coupons were made payable "to the order of bearer."

On the same date, Nov. 1, 1929, Approved Investment

Company executed and delivered to the bank its mortgage, dated Nov. 1, 1929, covering plots one (1) and two (2), which mortgage recited, among other things, as follows:

> "The mortgagor further represents that the funds hereby secured, are to be used for the purpose of refunding and paying the indebtedness secured by . . . (the) mortgages and encumbrances now against said real estate and premises herein described and to pay for additional improvements thereon . . ."

That mortgage was recorded in the office of the Recorder of Lake County on November 9, 1929.

The court found further:

> "(17) That (said bank) became the owner of the said mortgage bonds so delivered to it, by depositing to the credit of the said Approved Investment Company, in a commercial account in said bank, in a certain account known as the: 'Approved Investment Company Building Account,' the aggregate sum of One Hundred Twenty-Five Thousand ($125,000.00) Dollars, as follows, to-wit: a credit to said account on the 14th day of November, 1929, of the sum of Twenty-five Thousand ($25,000.00) Dollars, a credit to said account on the 16th day of November, 1929, of the sum of Fifty Thousand ($50,000.00) Dollars, a credit to said account, on the 7th day of December, 1929, of the sum of Twenty-five Thousand ($25,000.00) Dollars, and a credit to said account on the 13th day of January, 1930, of the sum of Twenty-Five Thousand ($25,000.00) Dollars; that at the various times that credit was given to the said Approved Investment Company, by the said First Trust & Savings Bank, the said bank charged a corresponding amount equal to the said respective credits to an asset account of said bank, known as the 'Real Estate Mortgage Loans Account.'
>
> "(18) That sometime during the month of November, 1929, the said mortgage bonds of the Approved Investment Company, dated November 1st, 1929, in the aggregate principal sum of One Hundred Twenty-five Thousand ($125,000.00) Dollars, were transferred to the bond department of the

said First Trust & Savings Bank of Hammond, Indiana, for sale to its customers; and that on the 16th day of November, 1929, and continuously thereafter, to and including the 24th day of January, 1931, the said First Trust & Savings Bank of Hammond, Indiana, sold the said mortgage bonds of the Approved Investment Company, dated November 1st, 1929, to its customers, for cash, . . ."

Of said 1929 bond issue, $90,800 in aggregate principal amount were owned at the time of the trial court's decision by a group of persons whom we shall herein refer to as the Millies group.

On the first day of November, 1929, the amount due from Approved Investment Company, by reason of the mortgage bonds and mortgage dated June 26, 1926, together with interest thereon to said date, was $37,105.47.

On November 15, 1929, a "check" was drawn against said Approved Investment Company Building Account (by the secretary-treasurer of said bank) for $37,-105.47, the amount due on November 1, 1929, on the 1926 bonds, and this amount was credited in an account known as *"Approved Investment Coupon Account."*

Checks in the aggregate sum $99,118.77 were drawn against said Approved Investment Building Account for various purposes connected with said building project, including checks in the total sum of $90,468.38 issued to contractors, material men and architects.

The court found further:

"(25) That the account known as the: 'Approved Investment Company Coupon Account,' was an account in said bank, used by said bank to credit all payments made by the Approved Investment Company, upon mortgages of the said Approved Investment Company, either for interest thereon, or the principal sums thereof, and to debit any payments made by said bank to the holders of bonds of the Approved Investment Company, which had

been sold by said bank, to said holders, either for interest due upon said bonds, as evidenced by interest coupons, or for the payment of the principal sums due upon said bonds; ..."

"(27) That on the 16th day of November, 1929, the said First Trust & Savings Bank of Hammond, Indiana, by means of a debit and credit slip, withdrew from the said account, known as the 'Approved Investment Company Coupon Account,' the sum of $35,000.00, for which sum the said account was debited; that said sum of $35,000.00 was transferred to the cash account of the said First Trust & Savings Bank of Hammond, Indiana, and with the sum of $35,000.00, the said First Trust & Savings Bank of Hammond, Indiana, purchased from itself, mortgage bonds of the Approved Investment Company, dated November 1st, 1929, in the aggregate principal sum of $35,000.00, and by a corresponding entry, credited the asset account of said bank, known as the 'Real Estate Loan Account,' and at the same time, removed bonds in the aggregate principal sum of $35,000.00 of the said issue, dated November 1st, 1929, from among the real estate bonds owned by said bank, and placed them in a separate envelope, which envelope was marked 'Approved Investment Company Escrow Bonds,' which said envelope was placed with other bonds and securities held for safe-keeping for its customers, in that part of the vault or safe, in said bank, where 'carte' or 'transit' items were kept."

"(54) That on the 2nd day of February, 1931, (when the bank closed) there remained in the possession of the said First Trust & Savings Bank of Hammond, Indiana, the envelope containing mortgage bonds of the Approved Investment Company, dated November 1st, 1929, in the principal sum of $33,000.00, which envelope was marked: 'Approved Investment Company Escrow Bonds;' that said bonds have remained in the possession and custody of the Receivers of said First Trust & Savings Bank continuously thereafter, until they were delivered into evidence in the case; that Harry E. Folk, as Receiver of the First Trust & Savings Bank of Hammond, Indiana, makes no claim of ownership or interest in and to the said bonds, in the principal sum of $33,000.00, dated November 1st, 1929."

"(30)   That all payments made by the Approved Investment Company, upon its mortgage dated June 26th, 1926, were paid to the First Trust & Savings Bank of Hammond, Indiana; . . . that the cross-complainants, Clara Kaufmann and others, the same being the holders and owners of mortgage bonds dated June 26th, 1926, never presented interest coupons due upon the mortgage bonds dated June 26th, 1926, for payment, to the said Approved Investment Company; that the cross-complainants, Clara Kaufmann et al., the same being the holders and owners of mortgage bonds dated June 26th, 1926, presented the interest coupons due upon the respective mortgage bonds held and owned by them, when the same became due, to the First Trust & Savings Bank of Hammond, Indiana, for payment, that all payments made upon the mortgage dated June 26th, 1926, at any time, to the holders and owners of the mortgage bonds of said issue, were paid to said holders by the First Trust & Savings Bank of Hammond, Indiana; and that the cross-complainants, Clara Kaufmann et al., the same being the holders and owners of mortgage bonds, dated June 26th, 1926, at all times prior to the 2nd day of February, 1931, looked to for, and depended upon the said First Trust & Savings Bank of Hammond, Indiana, to collect from the said Approved Investment Company the mortgage indebtedness due upon their respective mortgage bonds, dated June 26th, 1926.

"(31)   That the cross-complainants, Carl Kaufmann and Clara Kaufmann, had prior to the 1st day of November, 1929, notice and knowledge of the purpose and intention of the said First Trust & Savings Bank of Hammond, Indiana, to pay and retire the mortgage bonds of the said Approved Investment Company, dated June 26th, 1926, so held and owned at said time, by the said Clara Kaufmann, either by a payment of said mortgage bonds, in cash, out of the proceeds of the loan dated November 1st, 1929, or by an exchange of mortgage bonds, dated November 1st, 1929, of an equal amount, for mortgage bonds dated June 26th, 1926.

"(32)   That during the months of November and December, 1929, W. Norman Bridge and Edward Eggebrecht, employees of the said First Trust & Savings Bank, in its Bond Department on two occasions made oral requests to the cross-complainant,

Carl Kaufmann, to deliver the mortgage bonds then held and owned by the cross-complainant, Clara Kaufmann, dated June 26th, 1926, of the said Approved Investment Company, in the aggregate principal sum of Twenty-two Thousand ($22,000.00) Dollars, for exchange, for the same amount of mortgage bonds of the said Approved Investment Company, dated November 1st, 1929, of which demands, the said cross-complainant, Clara Kaufmann, had notice and knowledge."

"(33) That during the month of December, 1929, Peter W. Meyn (president of said bank) in a conversation with the cross-complainant, Carl Kaufmann, in the offices of said bank, made a request upon said Carl Kaufmann, to deliver to the said bank, the mortgage bonds then held and owned by the cross-complainant, Clara Kaufmann, dated June 26th, 1926, in the principal sum of $22,000.00, and at said time, told the said Carl Kaufmann, that the said bank would, upon the delivery of said bonds, in the principal sum of $22,000.00, dated June 26th, 1926, deliver to the said Kaufmann, mortgage bonds of the mortgage issue dated November 1st, 1929, for the same amount, or pay to the said Kaufmann, in cash, the principal amount thereof, together with accrued interest thereon, and informed and notified the said Carl Kaufmann, that the said bank, was at said time selling to the customers of said bank, over the counter, in its Bond Department, the mortgage bonds dated November 1st, 1929, of the said Approved Investment Company, of which demand and conversation, the said cross-complainant, Clara Kaufmann, had notice and knowledge."

"(34) That the cross-complainants, Clara Kaufmann and Carl Kaufmann, did not deliver to the First Trust & Savings Bank of Hammond, Indiana, the mortgage bonds, so held and owned by the said Clara Kaufmann, dated June 26th, 1926, in the principal sum of $22,000.00; and that the said cross-complainants, Carl Kaufmann and Clara Kaufmann, did not at any time prior to the closing of said bank on the 2nd day of February, 1931, present the said mortgage bonds of the said Clara Kaufmann, dated June 26th, 1926, in the principal sum of $22,000.00, to the said bank, for payment, or make any demand upon the said First Trust & Savings Bank of Hammond,

Indiana, or the Approved Investment Company, for payment of said mortgage bonds."

"(35) That the cross-complainant, Carl Kaufmann, knew prior to the 1st day of January, 1930, that the First Trust & Savings Bank of Hammond, Indiana, had made the mortgage dated November 1st, 1929; that said mortgage bonds dated November 1st, 1929, in the principal sum of $125,000.00, had been placed among the assets of the First Trust & Savings Bank of Hammond, Indiana, as first mortgage bonds; and that the First Trust & Savings Bank of Hammond, Indiana, was selling said mortgage bonds, dated November 1st, 1929, to its customers, at par, or full face value, as first mortgage real estate bonds."

"(53) That the cross-complainant, Carl Kaufmann, was during the years 1929 and 1930, a merchant in the city of Hammond, Indiana, and during said period and for a large number of years prior thereto, a part owner of the largest department store located in the city of Hammond, Indiana, which department store was located immediately across the street from the banking offices of the First Trust & Savings Bank, of Hammond, Indiana; that the said Carl Kaufmann remained a Director of the First Trust & Savings Bank of Hammond, Indiana, continuously after the year 1929, until the said bank closed on the 2nd day of February, 1931; that the said Carl Kaufmann, almost daily, witnessed the construction and erection of the building of the Approved Investment Company, on the property located at the intersection of Hohman and Doty Streets, in the city of Hammond, Indiana, and knew at said time, that his wife, Clara Kaufmann, was the holder and owner of mortgage bonds in the principal sum of $22,000.00 of the mortgage issue dated June 26th, 1926; that the said Carl Kaufmann knew at the time the said building was being constructed and erected, that the same was being paid for by and with funds of the First Trust & Savings Bank of Hammond, Indiana; that the said Carl Kaufmann visited the banking offices of the First Trust & Savings Bank of Hammond, Indiana, during the years of 1929 and 1930, almost daily; that the said Carl Kaufmann was an active Director of the First Trust & Savings Bank during the years 1929 and 1930, and attended

nearly all, if not all, of the meetings of the Board of Directors of the First Trust & Savings Bank of Hammond, Indiana, during said years; and that during the years 1929 and 1930, the cross-complainants, Carl Kaufmann and Clara Kaufmann, were husband and wife, and resided together in the city of Hammond, Indiana."

The court further found,

"(43) That prior to the 2nd day of February, 1931, the First Trust & Savings Bank of Hammond, Indiana, paid to holders and owners of mortgage bonds dated June 26th, 1926, the same being the cross-complainants herein, upon interest coupons presented to said bank, for payment the sum of $3,482.50, in excess of the payments made by the said Approved Investment Company, for interest upon said mortgage issue dated November 26th, 1926, which sum appeared as a part of the overdraft in the account in said bank, known as the 'Approved Investment Company Coupon Account'; and that interest upon said sum to the 20th day of December, 1933, at the rate of seven (7%) per cent per annum, is the sum of $1,102.50."

"(44) That prior to the 2nd day of February, 1931, the First Trust & Savings Bank of Hammond, Indiana, paid to the holders and owners of mortgage bonds dated November 1st, 1929, the same being the plaintiffs herein, upon interest coupons presented to said bank, for payment, the sum of $7,441.00, in excess of the payments made by the said Approved Investment Company, for interest upon said mortgage issue dated November 1st, 1929, which sum appeared as a part of the overdraft in the account in said bank, known as the 'Approved Investment Company Coupon Account'; and that interest upon said sum from the date the same was advanced or paid to the 20th day of December, 1933, is the sum of: $2,963.10."

"(46) That on the 13th day of November, 1930, the Lake Superior Court, Room No. 1, Hammond, Lake County, Indiana, in Cause No. 36591, found the Approved Investment Company to be insolvent, or in imminent danger of insolvency, and appointed the defendant, Charles L. Surprise, as Receiver of said Approved Investment Company; and that the

defendant, Charles L. Surprise, is now the duly appointed, qualified and acting Receiver of the said defendant, Approved Investment Company; and that subsequent thereto, there was entered by the said Lake Superior Court, Room 1, in said cause an order, permitting and allowing the plaintiffs herein, to make the said defendant, Charles L. Surprise, as Receiver of the Defendant, Approved Investment Company, a party defendant to this proceeding."

The issues in this cause were presented as follows:

On May 1, 1931, appellee, Fred J. Millies, and 121 other persons (the owners of $90,800 in principal of said 1929 bond issue), herein referred to as the Millies group, instituted an action to foreclose the mortgage securing said bond issue.

On July 20, 1931, appellant, Clara Kaufmann, and 13 other persons (owners of $33,000 in principal of said 1926 bond issue) instituted an action to foreclose the mortgage securing that bond issue.

On September 8, 1930, McLaughlin Mill Supply Company instituted an action to foreclose a claimed mechanic's lien against a building covered by both of said mortgages. Certain other parties holding mechanics' liens filed cross-complaints.

All the actions were consolidated. After the consolidation, appellees, Millies et al., filed an amended complaint and it was designated the complaint in the consolidated action. The other complaints were designated cross-complaints. It is not necessary for the purpose of this opinion that we discuss the pleadings. All cross-complaints to foreclose mechanics' liens were dismissed before trial, except those of three cross-complainants. The trial court found that said three cross-complainants should take nothing by their cross-complaints. None of them excepted to the finding, or appealed from the judgment.

The consolidated cause was submitted to the court for trial, and the court, upon proper request, made a special

finding of facts, as we have heretofore indicated, and stated conclusions of law.

The principal issue before the trial court was a question of priority of the liens of the parties to the suit. There was no dispute as to the amount due to respective judgment creditors.

The trial court held in its first conclusion of law that the Thum group, owners of $11,000 in principal of the 1926 bond issue, have a first lien on the property covered by the mortgage securing said bond issue, and that their lien be prior to the lien of "all other parties to this action including Clara Kaufmann . . ."

Conclusion two (2) and three (3) are as follows:

"2. That by reason of the knowledge, acts, interests and implied agreements of the said Clara Kaufmann and Carl Kaufmann, acting as her agent, the said Clara Kaufmann is not entitled to the priorities which she would otherwise have had under and by virtue of her bond secured by the mortgage dated the 26th day of June, 1926, but is entitled to a judgment against the Approved Investment Company and Charles L. Surprise, its receiver, in the sum of $30,085.00, plus $2,000.00, attorney fees, as set forth in the Findings herein; that she is, however, entitled to share with the plaintiffs and cross-complainants and the lien of her judgment is equal in priority to the liens of the bondholders secured by the mortgage dated November 1, 1929, and which is a second lien on the real estate described in said mortgage dated June 26, 1929."

"3. That by reason of the knowledge, acts, interests and agreements of the officials of the First Trust & Savings Bank of Hammond, Indiana, acting for and on its behalf, the said Harry E. Folk, Receiver of said bank, is not entitled to the priorities which said bank would otherwise have had under and by virtue of the purchase and payment for the coupons which were purchased and paid for by its said officers, but he is entitled to a judgment against the Approved Investment Company and Charles L. Surprise, its Receiver, for the sum of $10,361.97, plus $350.00 attorneys' fees, as set forth in the Find-

ings herein; that he is, however, entitled to share with the plaintiffs and cross-complainants and Clara Kaufmann and his judgment is equal in priority to the liens of Clara Kaufmann and the bondholders whose bonds are secured by the mortgage dated November 1, 1929."

Judgment was rendered in accordance with the conclusions of law.

Appellant, Clara Kaufmann, perfected an appeal from said judgment. It is not necessary to delineate all the errors presented by her upon appeal; it is sufficient to say in that regard that she has presented contended error in each the first, second, and third conclusions of law.

Appellees Millies et al. duly filed a cross-assignment of errors. It is not necessary that we state all the errors assigned by them upon appeal; it is sufficient to say in that regard that said appellees have assigned as cross-errors that the court erred in each the first and third conclusions of law, and have presented questions under said cross-errors.

Appellant Clara Kaufmann contends that upon the facts found by the court she was entitled to first mortgage rights in equal priority with the Thum group and ahead of the Millies group.

Appellees Millies et al. contend that the court did *not* err in its holding that appellant was entitled to equal priority with the Millies group.

One of the reasons of appellees Millies et al., in support of said contention, is stated as follows in their brief, "Appellant's agent having tacitly agreed to payment (of her bonds) before maturity, before a refinance and improvement plan was undertaken by a mortgagor (Approved Investment Company), she cannot refuse to discharge the debt upon the offer of payment, when the refinance and improvements are completed."

Appellees Millies et al. do not indicate where, in the

finding, it is shown that the court found that appellant's agent *"tacitly agreed to payment (of her bonds) before maturity."* The court did not find such fact.

In conclusion two (2) the court held that "by reasons of ". . . implied agreements" of Clara Kaufmann, she was not entitled to "the priorities which she would otherwise have had." Such a statement of fact, *if any*, being incorporated in the conclusions of law, cannot be considered a fact found by the court.

The court did not find facts which give rise to an implied agreement, by appellant Clara Kaufman, to accept payment of her 1926 bonds before maturity.

Appellees Millies et al. also base their said contention on a theory of estoppel. They contend "equitable estoppel includes concealment by silence, or failure to declare rights or claims, which will estop such rights or claims, as against the persons who should have been informed or notified." We accept said statement as a proposition of law. Appellee does not however make specific application of said proposition of law to the instant case. We do not think the doctrine of equitable estoppel is applicable here, as against appellant Clara Kaufmann. The finding of facts and conclusions of law clearly show that this cause was tried upon a theory of an implied agreement of appellant Clara Kaufmann, and not upon any theory of equitable estoppel as against her.

Appellees Millies et al. say further: "Appellant having delegated the mortgagee bank her agent to collect the mortgage debt, and the bank having received full payment of the 1926 mortgage, the lien securing appellant's debt is discharged as to third persons who subsequently acquired an interest in the mortgaged real estate, even though the agent converted the funds to its own use."

It is not necessary that we determine whether or not such a conclusion is founded in law. The facts found show that all payments made by the Approved Investment Company upon its mortgage dated June 26, 1926, were paid to the bank, that Clara Kaufmann presented the intereset coupons on her said bonds to the bank *"when the same became due,"* etc.; (See Finding 30) but the court did *not* find facts showing that appellant had delegated the bank to *"collect the mortgage debt,"* and therefore said point of appellee is unavailing.

The court did not find facts which give rise to an implied agency on the part of the bank, with power to collect appellant's bonds for her before maturity.

It is our opinion that under the facts found the court erred in holding that appellant Clara Kaufmann was entitled to *equal* priority rights with the Millies group; it is our opinion that under the facts found appellant Clara Kaufmann was entitled to first mortgage rights, superior to the rights of the Millies group, and therefore we hold that the court erred in each its first and second conclusions of law.

Appellees Millies et al. contend in support of their cross error that the court erred in its conclusion one (1) that "Appellees Thum et al. (owners of $11,000 of the 1926 bonds) having failed to obtain and record an assignment of the 1926 mortgage, in a suit by them on the mortgage instrument against third persons any defense can be interposed against them, that could have been interposed against the apparent owner, the mortgagee bank."

Appellee relies upon Sec. 2, Chap. 122, Acts of 1899 (Sec. 13489 Burns 1926, which was repealed by Ch. 128 Acts 1933.) Said statute did require assignees of mortgages of real estate to record such assignments and provide penalties for failure to record them, but it *did not provide that* where, as in the

instant case, the mortgage is given to secure a series of bonds, which bonds are payable to the mortgagee *or bearer,* and the mortgagee sells some of said bonds, *the purchaser thereof loses the security afforded by the mortgage if he fails to record an assignment of his proportional interest in said mortgage.*

Appellees Millies et al. contend further that they, being persons without notice, are protected against the unrecorded assignment of the 1926 mortgage.

It is our opinion that Sec. 13489 Burns 1926, *supra,* did not require the holders of the 1926 bonds to obtain and record assignments of their respective interests in the mortgage securing the bonds. The mortgage was duly recorded by the bank. The mortgage secured each of said bonds regardless of the person who thereafter became the owner thereof and no assignment of such bondholder's interests in the mortgage was necessary for the purpose of protecting such interests. The mortgage, which secured the 1929 bonds, recited that the funds of said bond issue were to be used "for the purpose of *refunding and paying* the indebtedness secured by (the) . . . mortgages and encumbrances *now* against said real estate." This recitation, if read by a prospective purchaser of one of the 1929 bonds secured by said mortgages in effect informed him that there *were* mortgages or encumbrances against the property. Certainly the Millies group had constructive notice of the prior liens of the respective holders of the 1926 bonds by reason of the recording of the 1926 mortgage. Furthermore, in view of said recitation in the 1929 mortgage the Millies group are not in position to contend lack of notice of the prior lien.

We hold, therefore, that the court did not err in its holding that appellees Thum are entitled to a first lien on their claim, with priority ahead of the claim of appellees Millies et al.

Three of the persons included in the Thum group (owners of $11,000.00 of the 1926 bonds) purchased and were the owners of 1929 bonds when this cause was tried. Appellees Millies et al. contend that said three persons "had actual knowledge of the two issues . . . and thereby impliedly knew of the receipt of payment of the 1926 mortgage by the bank . . . and the rights of (said three persons) . . . under their 1926 bonds are postponed to equality with the 1929 bonds" on the ground of estoppel. Appellee does not however specifically apply any theory of estoppel to the instant case in support of said contention. We deem it sufficient to say that the facts found by the court, including the fact that said three parties owned some of the 1929 bonds do not estop them from pressing their claim for priority with reference to their 1926 bonds. The fact that they had actual knowledge of the 1926 mortgage and purchased 1929 bonds did not cause them to lose their priority rights with reference to their 1926 bonds.

Appellees Millies et al. contend that the court erred in that part of the third conclusion of law in which it held that Harry E. Folk, as Receiver, was entitled to equal priority, on his claims for payment of interest coupons, with the lien of appellees' Millies et al.

Points one and two stated in their brief in support of said contention are based on theories of estoppel as against the Receiver; but each of said points is based on facts which were not found by the court, therefore we will not discuss said points. No other question of estoppel as against the Receiver is presented.

Appellees Millies et al. say further however "the bank having received and accepted payment in full of the 1926 mortgage prior to its acquiring the coupons

claimed, its receiver cannot be subrogated to a debt that has been paid and extinguished."

That proposition of law may be tenable as applied to facts other than those in the instant case, but is not tenable as applied to the instant case. Here the bank "paid" (finding 4) the mortgagor $35,000.00 for said 1926 bonds, which were payable to bearer. The bank sold the bonds to its customers. The bonds were negotable instruments, and payment therefor by the purchasers certainly did not "extinguish" the debt.

It should be noted here that the Receiver did not assign cross errors or present the question whether or not he was entitled to a *first* lien on his claim for *1926 interest coupons, a priority equal to that of appellees Thum et al.*

We hold that no error is shown to have been committed by the court in its holding that Harry E. Folk as receiver of the bank was entitled to equal priority with the lien of Appellees' Millies et al. on his claim for payment of interest coupons.

Appellant, Clara Kaufmann, filed a demurrer to the complaint (of appellee Millies et al.) which demurrer was overruled and appellant has assigned said action of the court as an error and presented questions thereunder. In view of the conclusions reached by us, we deem it unnecessary to discuss said questions. We deem it expedient, however, to say that the complaint alleged, among other facts, that appellant, Clara Kaufmann "entered into a parol agreement with the defendant Improved Investment Company, and the defendant, First Trust and Savings Bank of Hammond, Indiana, by the terms of which the said . . . Clara Kaufmann agreed to accept (1929) mortgage bonds . . . in the aggregate principal sum of Twenty-two Thousand ($22,000.00) in full and complete payment of the (1926) bonds held by . . . (her)."

Appellant, Clara Kaufmann, also assigns as error the overruling of her motion for a new trial. In view of the conclusions reached by us we deem it unnecessary to discuss any of the questions sought to be raised under said assigned error.

Having concluded that the trial court erred in each its first and second conclusions of law, the judgment is reversed with instructions that the trial court restate each of its conclusions of law in accordance with this opinion, and that further proceedings be consistent herewith.

Curtis, C. J., not participating.