## CITY OF LAFAYETTE v. KEEN ET AL.

[No. 16,989. Filed April 30, 1943. Rehearing denied May 28, 1943. Transfer denied June 23, 1943.]

554

556

*E. Burke Walker,* of Lafayette, for appellant.

*Francis T. Murphy,* of Lafayette, and *John J. Gould,* of Indianapolis, for appellees.

CRUMPACKER, J.—This action was brought by William Keen and fifty-four others similarly situated against the City of Lafayette to recover a sum of money each claimant alleges is due him as the unpaid balance of his salary as a member of the fire department of said city during the years 1933 to 1936, both inclusive. Issues were joined by an amended complaint and an answer in general denial together with special pleas of payment, waiver, estoppel and the alleged repeal of the ordinance upon which the appellees base their claims. Replies in general denial were filed to each of these special paragraphs of answer and the cause was tried to the court, the facts were found specially, four conclusions of law, all favorable to the appellees, were stated thereon, and judgment rendered accordingly. Its motion for a new trial having been overruled, the City of Lafayette brings this appeal insisting that the court below erred in each of its conclusions of law and in overruling the motion for a new trial.

The facts as found by the trial court are substantially as follows. On the 7th day of January, 1929, the common council of the City of Lafayette duly enacted an ordinance fixing the monthly salary of members of its fire department in various amounts ranging from $165.00 for the chief to $120.00 for hosemen and drivers. This ordinance remained of record from the date of its passage until it was repealed on January 1, 1937,

during which time it was not amended or superseded by any other salary ordinance. For some time prior thereto and during the years 1933 to 1936, both inclusive, each of the appellees was a duly appointed member of the appellant's fire department. For their services prior to 1933, each of the appellees was paid the salary fixed by said ordinance and appropriate to his position in the department. With the onset of the industrial and economic depression of recent years the valuation of taxable property in the City of Lafayette fell off several million dollars, many of its citizens were unable to pay taxes, and an insistent public demand arose that the cost of local government be curtailed by the reduction of salaries of public officers and employees. Yielding to this demand the appellant, beginning with January 1, 1933, deducted from the monthly pay of each of the appellees as fixed by said ordinance a sum equal to ten per cent thereof. This practice continued until January 1, 1937, during all of which time the appellant, through its common council, levied taxes and appropriated funds therefrom sufficient to pay the appellees on the basis of such reduction and no more. This was accomplished by the annual passage of an ordinance fixing the tax levy, budgeting the various departments of city government and appropriating funds for their needs. Each of said ordinances for the years in controversy was adopted after due publication of notices and each of the appellees was fully aware of the proposal and passage of said ordinances but continued nevertheless to accept his reduced salary from month to month without comment or protest. In no other manner did any appellee indicate that such salary was accepted by him in full payment of the amount fixed by the ordinance of January 7, 1929, or the law of the State, nor did any appellee otherwise actively

signify his intention to waive any claim he might have against the appellant for the payment of the balance of such salary. None of the appellees took active or affirmative steps, however, to collect the same until after the repeal of said ordinance in January, 1937. Applying the reduction formula provided by § 2, ch. 70 of the Acts of 1932 (Special Session), § 49-1106, Burns' 1933, § 7597, Baldwin's 1934, to the salary schedule as fixed by the ordinance of January 7, 1929, the trial court found that the salary of each appellee thus determined was in excess of that paid to him by the appellant during the years in controversy and, concluding that the law applicable to such a state of facts is favorable to the appellees, entered judgment accordingly.

Having lodged this appeal with us the appellant now challenges our jurisdiction to entertain it for the reason that the validity of an ordinance is involved and therefore the determination of the entire matter rests with the Supreme Court and not here.

The statute authorizing cities through the common council to fix the salaries of their firemen is as follows:

"The annual pay of all policemen, firemen and other appointees shall be fixed by ordinance of the common council; and it shall be lawful in such ordinance to grade the members of such forces and to regulate their pay, not only by rank, but by their length of service." § 48-6102, Burns' 1933, § 11477, Baldwin's 1934. The attack on the ordinance before us is grounded solely on the fact that it fixes firemen's salaries on a monthly instead of an annual basis as provided by the above statute. This is a distinction without a difference and presents no substantial or serious question for our determination. The defect complained of is a mere irregularity, not substantive in nature or character, and does not go to the

validity of the ordinance as the statute fixing our jurisdiction uses the term. We have held on previous occasions that questions of this kind do not deprive us of jurisdiction over appeals that otherwise belong here. *City of Hammond* v. *N. Y., etc., R. Co.* (1892), 5 Ind. App. 526, 31 N. E. 817; *Dugger* v. *Hicks* (1894), 11 Ind. App. 374, 36 N. E. 1085; *New Albany Gas Light & Coke Company* v. *Crumbo* (1894), 10 Ind. App. 360, 37 N. E. 1062; *Pittsburgh, etc., Railway Company* v. *Hays et al.* (1897), 17 Ind. App. 261, 45 N. E. 675.

Considering the case on its merits we are first confronted with appellant's assertion that the appellees' salaries could be and were lawfully reduced through the sole device of failing to appropriate sufficient money to pay them in full. It is contended that such procedure is authorized by § 4, ch. 70 of the Acts of 1932 (Special Session), § 49-1108, Burns' 1933, § 7599, Baldwin's 1934, then in full force and effect. This act was passed by a special session of the Legislature in 1932 in recognition of the crisis then existing in the industrial, financial and economic affairs of our State and in the belief that a reduction in the salaries of public officers would relieve to some extent the tax burden of the people. It was approved August 18, 1932, and the first section thereof provides, "That on and after the first day of the next ensuing fiscal year of the state or of any municipal corporation thereof, the salary of all officers of the State of Indiana and of the several municipal subdivisions thereof, including the officers of each county, township, city, town, school city, school town, school township and of each taxing unit or district in the State of Indiana, shall be paid in accordance with the schedule of compensation for such officers as provided in section 2 of this act." The second section prescribes a formula to be applied to the salary of any

such officer as of January 1, 1932, for the determination of the "new salary" and it is then provided in section three that the salary so fixed shall be the maximum amount any such officer shall receive for his services but that the same may be still further reduced in the discretion of the legally constituted authority having the power to fix salaries in any particular case. As section four of the act furnishes the basis of appellant's contention on this feature of the case, we quote it in full: "All appropriations made for the payment of salaries in any municipal corporation of this state, during the fiscal year of such municipal corporation beginning next subsequent to the passage of this act, and each year thereafter, shall in no case exceed, in the aggregate, ninety per cent of the appropriations made and expended for salaries in such municipal corporation during the year 1931."

In its entirety the appellant construes this statute to provide three methods for the reduction of salaries of municipal employees. First, the formula set up in the second section thereof may be applied; second, the common council may pass an ordinance for the express purpose; and third, sufficient money to pay such salaries in full need not be appropriated. The appellant contends that it was entirely at its option as to which of such methods it saw fit to use in reducing the monthly pay of its firemen and, having chosen the third of such methods, the appellees are without remedy. We cannot accept this interpretation of the meaning and purpose of the statute. It seems clear to us that the Legislature, for reasons heretofore indicated, determined that the salary of public officers, from the beginning of the next fiscal year after August 18, 1932, to January 1, 1936, should

not be in excess of what they were on the first of January, 1932, as reduced by the application of the formula set up in section 2 of the act. If a municipality considered that a still greater reduction was advisable, that purpose could be accomplished by the enactment of an appropriate ordinance, but in no event could total yearly salary appropriations exceed ninety per cent of what had been expended for that purpose during the year 1931. The formula under discussion was devised to reduce salaries in various percentages depending on the amount of each specific salary to which it was applied but, as an average, such reduction was esti- mated to run at ten per cent and hence the provision in section 4 of the act that in no event shall the amount appropriated for salary purposes "exceed, in the aggre- gate, ninety per cent of the appropriations made and expended for salaries in such municipal corporation during the year 1931." This blanket provision did not apply to individual salaries and if the entire ten per cent reduction in payroll could be effected by the appli- cation of the formula as provided in section 2 the entire statute had been complied with. If it could not, the taxing unit had the right to reduce salaries below the formula or to retain the formula and reasonably curtail personnel. The purpose of the entire act, in our opinion, was to reduce all salaries in such a manner as to be less drastic upon persons in lower income brackets and to prevent the wholesale discharge of employees in order to bring about the total ten per cent reduction without any reduction in the salaries of those retained. We find nothing in the act that justifies the appellant in arbitrarily reducing the salaries of appellees by a flat ten per cent and nothing therein relieved the appel- lant of the necessity of amending the ordinance of 1929,

or passing a new salary ordinance in the event it sought a reduction beyond that effected by the formula.

Appellant's next contention is based on that general principle of law so frequently announced by our courts, that one dealing with a city cannot recover in excess of the existing appropriation for the purpose and that only ninety per cent of the aggregate sum necessary to pay appellees on the basis of the ordinance of 1929 having been appropriated during the years in controversy, they are without remedy. The case of *City of Peru* v. *State ex rel. McGuire* (1937), 210 Ind. 668, 199 N. E. 151, cited with approval in *State ex rel. Shanks* v. *Com. Council, City of Wash.* (1937), 212 Ind. 38, 7 N. E. (2d) 968, holds that a fireman is merely an employee of a city and his relationship thereto is purely contractual and any claim he may have for unpaid wages must be enforced through an action for breach of such contract. These decisions, the appellant contends, bring the instant case squarely within our statute rendering all contracts void which have been entered into by a city which has not first made appropriations therefor. § 48-1507, Burns' 1933, § 11464, Baldwin's 1934.

It is well settled that the so-called "Firemen's Civil Service Law," Acts 1905, ch. 129, § 160, and Acts 1933, ch. 86, § 1, constitute firemen tenure employees of a city and that their employment is continuous until terminated as provided by such statutes. *State ex rel. Shanks* v. *Com. Council, City of Wash., supra; City of Peru* v. *State ex rel. McGuire, supra.* Such being their status, can it be said that they must work for less than their legal pay as fixed by ordinance or resign their jobs if the common council fails or refuses to appropriate sufficient money to pay them in full? We recognize and appreciate the wis-

dom and wholesome purpose of the statutory provision that "all contracts and agreements, express or implied, and all obligations of any and every sort, beyond such existing appropriations are declared to be absolutely void." § 48-1507, Burns' 1933, § 11464, Baldwin's 1934. The case of *Ohio Oil Co.* v. *Michigan City* (1941), 117 F. (2d) 391, involved a contract for supplies for the police and fire departments of said city. The appropriation had been exhausted before the supplies under the contract had been furnished although it was difficult to say that such was the condition of the appropriation at the time the contract was made. In construing the statute above referred to the court held that it was not intended to make persons dealing with the city do so at their peril and the city having used the supplies the oil company could recover on the basis of a *quasi* contract for goods had and received. This case is not cited with the thought that it is decisive of the question in hand but rather to indicate that the rigid and unyielding application of the strict letter of the statute has been relaxed by a court of high authority and respectability. In the cases cited by the appellant, and many others that we have examined, the statute in question was given full force and effect but in all of them there was no existing and sufficient appropriation at the time the contract was made and in none of them was a tenure contract, valid in its inception, involved. The closest in point, coming to our attention, is the case of *Schroeder* v. *City of New Albany* (1930), 91 Ind. App. 62, 170 N. E. 83. There this court applied the statute in a fireman's suit to recover for extra services. The complaint was held bad because it did not allege a contract for such services and that there was an appropriation existing and available at the time such services were performed. This case helps us very

little because it cannot be said that a fireman has a tenure contract for extra work and in the absence of a showing to the contrary it is to be presumed that the salary provided by the contract for his usual and ordinary services, be it express or implied, was intended to compensate him for his occasional extra work.

Having found no compelling authority, either in this State or elsewhere, it is difficult for us to subscribe to appellant's contention that a tenure contract, valid in its inception and which the Legislature has said can be terminated by the city only for cause after proper hearing, can subsequently be rendered invalid by the failure of the common council to appropriate sufficient money for its performance. The appellees held tenure contracts with the appellant to render services to said city for the compensation provided by the ordinance of 1929, as long as the same remained in force and until such contracts were legally terminated. That they should be paid as provided by the terms of said ordinance as long as it remained in force and that the appellant should provide the funds therefor was of the very essence of the contracts. The appellant now says it is relieved of its obligation to pay because the passage of insufficient appropriation ordinances rendered the contracts, valid when made, illegal and void under the statute heretofore referred to. If that be the law a continuous contract can be made valid one year and invalid the next depending upon the current disposition of the common council in that regard. We cannot sanction a legal principle attended by such an absurdity. It seems to us that the logical solution of the problem lies in the proper construction of the "Firemen's Civil Service Law," *supra*. When the Legislature provided for the employment of firemen for a continuous and indefinite period

of time to be terminated for cause after proper notice and hearing, it cast a mandatory duty upon the common council to appropriate annually sufficient money to pay their salaries for the ensuing year as the same might be fixed by ordinance. This being appellant's plain duty the appellees' right to recover does not depend upon the existence of an appropriation as otherwise such duty could be avoided and set to naught by a failure to perform it.

Appellant next contends that the ordinance of 1929 is nullified by § 10, ch. 233 of the Acts of 1933, § 48-1222, Burns' 1933, § 11403, Baldwin's 1934, which places the responsibility of employing and discharging city employees directly on the mayor and gives him power to fix their salaries with the approval of the council. Whatever may be the effect of this statute on other employees it has no concern with firemen as they are specifically taken out of its purview by the following proviso: "Nothing contained in this act shall be construed to repeal, alter or amend any law now in force or enacted by the Seventy-eighth General Assembly concerning the employment, suspension and/or dismissal of the members of the fire and police departments of the several cities of this state." The appellant asserts that this proviso must be strictly construed and that the word "salary" cannot be read into it. Such a construction means that firemen cannot be employed, suspended or discharged by the mayor but he alone can fix their salaries in the first instance. It seems unlikely to us that the Legislature sought to so divide responsibility. The word "employment" has no technical meaning peculiar to the law and what the Legislature meant by its use must be determined by the legislative purpose and context of the act in which it is used. 20 C. J. 1245, Note 57. As used in the act

under consideration it is apparent that it means hiring, and hiring inescapably carries with it the idea of paying the person hired. The undoubted purpose of the act was to vest in the mayor full power to hire, discharge and fix the salaries of all employees of the administrative and executive branches of the civil city except members of the fire and police departments whose status in that regard was to remain as it had been under prior statutes. *State ex rel. Bailey* v. *Webb* (1939), 215 Ind. 609, 21 N. E. (2d) 421. Therefore, we are of the opinion that the ordinance upon which the appellees base their claim was not nullified by the Act of 1933, *supra*.

But notwithstanding all this, the appellant contends that the appellees are attempting to assert a stale claim upon which they have slumbered too long. This ▊▊▊ is an action at law to recover damages for an alleged breach of contract, and ordinarily the appellees would have the right to assert their claims any time within statutory limitation. Assuming without deciding, however, that a defense purely equitable in its nature may be interposed to a cause that is strictly legal in character, we are of the opinion that there is nothing in the present case that affords the appellant relief through the doctrine of laches as applied to the factual situation set out in the special findings. In *Haas* v. *Holder, Trustee* (1941), 218 Ind. 263, 272, 32 N. E. (2d) 590, Shake, J., quotes the following language from 21 C. J. 210 with approval: " 'Laches in a general sense is the neglect, for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done. More specifically, it is inexcusable delay in asserting a right; an implied waiver arising from knowledge of existing conditions and an acquiescence

in them; such neglect to assert a right as, taken in conjunction with lapse of time more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity; such delay in enforcing one's rights as works disadvantage to another.'" Prejudice to the adverse party is an essential element of the doctrine and in the absence of a showing that there has been a change in the situation of the parties to the disadvantage of him who seeks to invoke it, laches is not available as a defense. *Mascari* v. *Mascari* (1926), 255 Mass. 92, 151 N. E. 77; *Cohen* v. *Bailly* (1929), 266 Mass. 39, 165 N. E. 7; *Baumrucker* v. *Brink* (1940), 373 Ill. 82, 25 N. E. (2d) 51. There is no finding of fact in the instant case that the appellant has in anywise been prejudiced by the appellees' delay in bringing this suit. The burden of such a showing was on the appellant and the silence of the trial court's finding of facts in that regard is the equivalent of a finding that no such prejudice resulted therefrom. *Deming Hotel Co.* v. *Sisson* (1940), 216 Ind. 587, 24 N. E. (2d) 912; *State ex rel. Johnson* v. *Boyd* (1940), 217 Ind. 348, 28 N. E. (2d) 256; *Home Equipment Company, Inc.* v. *Gorham* (1941), 218 Ind. 454, 33 N. E. (2d) 99; *Lindley* v. *Seward* (1937), 103 Ind. App. 600, 5 N. E. (2d) 998.

Appellant further insists that the appellees by their silent acquiescence in the reduction of their salaries for a period of years are now estopped from asserting their claims. There are instances when the mere silence of the estopped party and his failure to assert the right later claimed will be construed as a representation that he does not have the right which he later attempts to assert. This doctrine, however, is only applicable where there is some element of turpitude or neglect connected with such silence or

inaction by which the adverse party is misled to his injury. 19 Am. Jur. 662; *Pape* v. *Pape* (1918), 67 Ind. App. 153, 119 N. E. 11; *Kaufmann* v. *Millies et al.* (1939), 106 Ind. App. 569, 18 N. E. (2d) 970. There is no element of turpitude or prejudicial neglect in the case at bar and the law will not withdraw its remedies from the appellees merely because they endured the appellant's wrong in silence and without protest. Much the same may be said as to the appellant's defense of equitable waiver. Mere silence or delay is not sufficient to establish a waiver unless such silence or delay, combined with good faith conduct on the part of the adverse party, has led to a prejudice of his rights. *Maginnis* v. *Knickerbocker Ice Co.* (1901), 112 Wis. 385, 88 N. W. 300, 69 L. R. A. 833. Any question of a legal waiver is set at rest by the fact that the appellees accepted their reduced salaries with no intention of thereby waiving their rights to the balance.

It is argued that the principles of equitable defenses we have heretofore discussed are concerned only with individual rights of a private nature and have no application where long delay, founded upon the security of strictly legal rights, is in conflict with the public interest or defeats a wholesome public policy. We concede that in proper cases our courts have drawn such a distinction (*Vickery* v. *The Board of Commissioners of Hendricks County* [1893], 134 Ind. 554, 32 N. E. 880; *City of Logansport* v. *Uhl* [1885], 99 Ind. 531; *Ryason* v. *Dunten* [1905], 164 Ind. 85, 73 N. E. 74), but we cannot see its applicability here. The reduction of public payrolls in the difficult years of 1933 to 1936, inclusive, was a wholesome public policy which the Legislature said should be carried into effect as provided in the Act of 1932, *supra.* The appellant's failure to do so has been rectified by

the judgment of the court below. The interest of the public lies in compliance with legislative enactment and not in its disregard.

The sole remaining question presented to us is the appellant's contention that the trial court erred in the measure it used in assessing damages. The ordinance of July 7, 1929, fixing appellees' salaries was not repealed, amended or modified by the appellant until January 1, 1937, nor was it nullified by the Act of 1932, *supra*. The appellees, having worked continuously through the disputed period, were entitled to recover the difference between what they were paid for their services during such times and the amount fixed by said ordinance as reduced by the requirements of Sec. 2 of the Act of 1932, *supra*. This is the measure used by the court in assessing the damages awarded.

We find no error and judgment is affirmed.

NOTE.—Reported in 48 N. E. (2d) 63.