67 So.2d 789

HILL et al. v. RICE.

1 Div. 568.

Supreme Court of Alabama.

Oct. 29, 1953.

Albert S. Gaston, Mobile, for appellee.

Thos. E. Twitty, Marshall J. De Mouy and Inge, Twitty, Armbrecht & Jackson, Mobile, for appellants.

GOODWYN, Justice.

The appellee, complainant below, filed a bill of complaint in the Circuit Court of Mobile County, Alabama, in equity, seeking an injunction to restrain appellants, respondents below, from conducting a dancing school in competition with complainant. The bases of the claimed right to injunction are contracts entered into by complainant and with each respondent separately. These contracts are referred to in the bill of complaint and attached thereto as exhibits. The contract with respondent Hill, executed on November 14, 1951, and the

contract with respondent Taylor, executed on March 3, 1952, are identical, except for dates and parties. Each provides as follows:

"1. The employer hereby employs the employee as a dancing instructor supervisor or interviewer for a period of one year from the date hereof, and the employee agrees to serve in such capacities and observe the rules and regulations of the employer therein. The employer will pay to the employee, who will accept in full payment for his or her services, the following:

"(a) Per hour of actual instruction, not less than $1.00 nor more than $5.00, according to the rating of the employee.

"(b) Commissions on renewal courses shall not be less than 5% nor more than 25%, according to the rating of the employee. Renewal courses shall be those taken by pupils immediately following another course. The commission thereon shall be paid to the employee only during his actual employment.

"(c) For supervising and interviewing, the employer will pay the employee commissions of not less than 1% nor more than 15%, according to the rating of the employee.

"(d) For instructing or other services at hotels where branch studios are or may be established, the employer will pay the employee compensation at the rate paid by the employer at such branch studio pursuant to arrangements made with the hotels in which they are located.

"The employer will establish rating schedules in which she will fix ratings which she will give to employees and the schedules of compensation for each group in such rating schedule, within the limits hereinbefore set forth. The employer shall determine the rating to be given to each employee, and may change such rating from time to time.

"2. The employee shall render his or her services on the afternoon and night shift or the morning and afternoon shift or at such times of day and at such days as he or she may be directed by the employer, but there shall be no fixed minimum or other provision with regard to the total number of hours that the employee shall be actively engaged.

"3. The employer will give to the employee a course of training in dance instruction in order to fit the trainee to teach dancing according to the methods of the employer. After such course of training is given to the employee, there will be disclosed to him or her further information as to the methods of the employer, the names of pupils and patrons of the employer, and he or she will have occasion at the behest of the employer, to meet such pupils and patrons. Proprietors, managers and all employees of hotels, resorts, ships or establishments of any kind at which the employer had or may have branch studios, shall, among others, be considered patrons of the employer.

"4. The employee agrees, during his or her employment, that he or she will not directly or indirectly be or become engaged in business as a dancing instructor or teach, accept employment in any capacity whatsoever in any dancing studio, dance for hire or compensation in any manner, give exhibitions, instruction or lectures in dancing in any form whatsoever, directly or indirectly solicit business in any manner relating to dancing or dancing lessons or instructions from anyone or have any dealings, contracts, relationships in respect to dancing with any person, except for or at the direction of the employer.

"5 The employee agrees that upon the termination of his or her employment for any cause, and for a period of two years thereafter, that he or she will not in the City of Mobile or any county, whether in the State of Alabama or not, which adjoins Mobile County, within a radius of 75 miles of the employer's studios in the City of Mobile or within 75 miles of any studio which uses and is entitled to use the name of Arthur Murray, without the written consent of the employer, accept employment in any manner relating to dancing, dancing engagements or exhibitions, dancing lessons or instructions, or lectures in dancing in any form whatsoever, or be or become engaged directly or indirectly in business in any such respects relating

to dancing at any hotel, resort, ship or establishments of any kind at which the employer has, had, or may have a branch studio, during the employee's employment or during such two year period thereafter, nor solicit business for himself or any other business in any manner relating to dancing, from any of the employer's pupils or patrons or from any other persons who had, at any time, been pupils or patrons or from persons whose names have been furnished to the employee by the employer, nor directly or indirectly engage in teaching dancing to any person.

"6. The employee will never at any time after the termination of his or her employment hold himself out or advertise himself, for business purposes, as having formerly been connected with Arthur Murray or any Arthur Murray dancing school or studio in any capacity, nor in any way use the name of Arthur Murray. The employee also agrees that during the term of his or her employment or any time thereafter he or she will not in any manner for any reason discourage or influence students or prospective students from continuing or commencing courses of dancing lessons or instructions from any Arthur Murray Dancing School."

It is alleged in the bill of complaint as follows:

"13. That each of said defendants voluntarily terminated her employment with your oratrix more than one year but less than two years from the dates of their respective contracts.

"14. That notwithstanding the provisions of paragraph No. 5 of each of said contracts, and without the consent of your oratrix as provided therein, the two defendants have opened and are now conducting and are widely advertising a school of dancing on Dauphin Street in the said city of Mobile, Alabama, in open and willful competition with your oratrix."

This appeal is from decrees overruling respondents' demurrer to the bill of complaint and granting to complainant a temporary restraining order applicable to Mobile County. The grounds of demurrer here insisted on are that, (a) there is no equity in the bill, (b) there is a misjoinder of parties-respondent, and (c) each contract is unenforceable because it lacks mutuality. We address our discussion to these insistences.

## Equity of Bill

Except as to failure to show a sufficient consideration moving from complainant to respondents, as hereinafter indicated and discussed, we think the general demurrer going to the equity of the bill was properly overruled.

The enforceability of negative covenants in employment contracts, such as we have here, has been the subject of many litigated cases and a fertile field for text-book writers, law journal contributors, and annotators. In this connection, we invite attention to the case of Arthur Murray Dance Studios of Cleveland v. Witter, Ohio Com.Pl.1952, 105 N.E.2d 685–712, as indicative of the feeling of frustration which might reasonably engulf the researcher on the subject. While that case is not from the court of last resort of Ohio, it is, to say the least, proof sufficient of the difficulty encountered in resolving questions incident to such covenants. As there plaintively observed, in which we feelingly concur:

"This is not one of those questions on which the legal researcher cannot find enough to quench his thirst. To the contrary there is so must authority it drowns him. It is a sea—vast and vacillating, overlapping and bewildering. One can fish out of it any kind of strained support for anything, if he lives so long. This deep and unsettled sea pertaining to an employee's covenant not to compete with his employer after termination of employment is really Seven Seas: * * *." [105 N.E.2d 687.]

The policy of this state with respect to such contracts is embraced in Sections 22, 23 and 24, Tit. 9, Code 1940. Sections 22 and 23 are as follows:

"§ 22. Every contract by which any one is restrained from exercising a lawful profession, trade, or business of

any kind, otherwise than is provided by the next two sections, is to that extent, void.

"§ 23. One who sells the good will of a business may agree with the buyer, and *one who is employed as an agent, servant, or employee may agree with his employer, to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city, or part thereof,* so long as the buyer or any person deriving title to the good will from him, and *so long as such employer carries on a like business therein."* [Emphasis supplied.]

Section 24, not here applicable, provides for further exceptions in favor of partnership arrangements.

■ Mr. Justice Bouldin, in discussing these sections in Shelton v. Shelton, 238 Ala. 489, 492, 192 So. 55, 57, observed that "the statutes * * * mean what they say". There can be no question, then, in view of Section 22, supra, that if the contracts place more restraint on the respondents than permitted by Section 23, supra, they are, to that extent, void. And as further observed in Shelton v. Shelton, supra:

"It should be steadily borne in mind that a court of equity will not grant injunctive relief in every case within the letter of this statute. * * *

"Injunction is in much a discretionary remedy to prevent substantial injury where no adequate remedy at law obtains. * * *

■ In determining whether such relief is appropriate, there should be taken into account "such considerations as the nature or character of the employment, the size and condition of the locality to which the prohibition extends, the duration of the prohibition, and the consideration moving to the employee for his agreement to the restriction." 36 Am.Jur., Monopolies, Combinations and Restraints of Trade, p. 554, sec. 78. Continuing to quote from the same authority: "Where the restraint is larger and wider than the protection of the party with whom the contract is made can possibly require, such restraint must be considered as unreasonable in law, and the contract which would enforce it is therefore void." From sec. 79 of the same authority is the following:

"The question whether the agreement will be enforced is to be determined in view of the circumstances of the case. Consideration is given to the reasonableness of the restriction with respect to the nature of the employment, the duration of the period of restraint, and the scope or extent of the restriction, territorially. The employee will be held not to be bound by the covenant where it appears that the restriction, in respect of its scope or extent, is comprehensive in a degree that is not necessary to the protection of the employer's interests. * * *

"The fact that the employment is of such a character as to inform the employee of business methods and trade secrets which, if brought to the knowledge of a competitor, would prejudice the interests of the employer, tends to give an element of reasonableness to a contract that the employee will not engage in a similar business for a limited time after the termination of his employment, and is always regarded as a strong reason for upholding the contract. * * * Employments which involve acquisition by the employee of confidential knowledge and acquaintance with the employer's clientele are regarded as peculiarly appropriate to restrictions against the use of such knowledge in competition with the employer."

As to the reasonableness of such covenants, "the test generally applied * * * is whether or not the restraint is necessary for the protection of the business or good will of the employer, and, if so, whether it imposes on the employee any greater restraint than is reasonably necessary to secure to the business of the employer, or the good will thereof, such protection, regard being had to the injury which may result to the public from restraining the breach of the covenant, in the loss of the

employee's service and skill and the danger of his becoming a charge upon the public. In order to sustain such restrictive covenants in contracts of employment it is necessary that the covenants shall not offend against the rule that as to the time during which the restraint is imposed, or as to the territory it embraces, it shall be no greater than is reasonably necessary to secure the protection of the business or good will of the employer." Anno., Agreements Restricting Employment, 119 A.L.R. 1452. For ·other annotations on the subject see 3 A.L.R.2d 522; 152 A.L.R. 415; 98 A.L.R. 963; 67 A.L.R. 1002; 52 A.L.R. 1362; 29 A.L.R. 1331; 20 A.L.R. 861; 9 A.L.R. 1456.

■ The principle is thus stated in 17 C.J.S., Contracts, § 254, page 636: ·  ·

"Generally, * * *, it is the rule in the absence of contrary statute that agreements by which an employee as part of his contract of employment undertakes not to enter into a competing business on leaving his employer's service are sustained if they are no wider than reasonably necessary for the protection of the employer's business, and do not impose undue hardship on the employee, due regard being had to the interests of the public."

■ One of the many well-considered cases on the subject which we have read and considered is Kadis v. Britt, 224 N.C.· 154, 29 S.E.2d 543, 546, 152 A.L.R. 405. We call attention to the following òbservations from that decision which are in accord with our views:

"* * * In short, equity will not specifically enforce, as of course, the naked terms of a negative covenant restricting other employment unless, supporting the affirmative promise, the employer has a substantial right—unique in his business—which it is the office of the court to protect; and the restriction laid upon the employee has a reasonable relevancy to that result, and imposes no undue hardship. But, after all this has been said, the right of the employer to protect, by reasonable contract with his employee, the unique

assets of his business, a knowledge of which is acquired in confidence during the employment and by reason of it, is recognized. * * *

"Contracts restraining employment are looked upon with disfavor in modern law. McCluer v. Super Maid Cook-Ware Corp., 10 Cir., 62 F.2d 426; Samuel Stores, [Inc.] v. Abrams, 94 Conn. 248, 108 A. 541, 9 A.L.R. 1450; Brown v. Williams, 166 Ga. 804, 144 S.E. 256; Love v. Miami Laundry Co., 118 Fla. 137, 160 So. 32; 22 Cornell Law Review, pp. 248 and 249; 5 Williston on Contracts, Sec. 1643. And they have been held to be prima facie void. McCluer v. Super Maid Cook-Ware Corp., supra. From the beginning the argument against restraint of employment was—and still is—more powerful than those based on the evils of monopoly incident to restrictions in sales contracts. Restraint of employment tends not only to deprive the public of efficient service, but to impoverish the individual and make him a public charge at the expense of the taxpayer. See Am.Law Reps.; Clark Paper & Manufacturing Co. v. Stenacher, 236 N.Y. 312, 140 N.E. 708, 29 A.L.R. 1325; also, Benjamin on Sale, supra. Modern thought, at least in this country, would perhaps place the emphasis on the plight of the individual, who might be needlessly pauperized while ready, able and willing to work at his usual occupation for the support and independence of himself and his family. The preamble to our Unemployment Compensation Law recognizes the security of employment as a prime factor in the stability of government."

In Deuerling v. City Baking Co., 155 Md. 280, 141 A. 542, 545, 67 A.L.R. 993, the court, in considering a contract in restraint of employment, stated as follows:

"The parties to this contract agreed to the restrictive covenant, and, if its terms are fair and reasonable, a court of equity should enforce its provisions by granting injunctive relief. The question of whether it is reasonable depends upon circumstances, the more

important of which are: Is the purpose to be obtained a fair and conscionable one; will it do greater harm to the employee than good to the employer; and, if it is reasonable as between the parties, does it so injuriously affect the public as to make it void as against public policy?"

In Cropper v. Davis, 8 Cir., 243 F. 310, 314, 156 C.C.A. 90, it is stated as follows:

"* * * the rule is that a restrictive contract should be tested by determining on the facts of the particular case whether the restriction upon one party is greater than is reasonably necessary for the protection of the other party. Hall Mfg. Co. v. Western Steel & Iron Works, 7 Cir., 227 F. 588, 142 C.C.A. 220, L.R.A.1916C, 620. * * *"

By the foregoing, we have attempted to set down some of the guiding principles in the consideration of contracts such as we have before us, with the thought that they may be helpful should this case proceed to further trial in the court below.

### Misjoinder of Parties-Respondent

The objection that there is a misjoinder of parties-respondent is not well taken. Although there are two separate and distinct contracts involved, they are identical in form, and the bill shows that the respondents are jointly engaged in the alleged violation thereof. Under the peculiar facts stated in the bill, it is our opinion that it would serve no good purpose to compel the institution of separate proceedings against each respondent. We see no reason why there should be any confusion in protecting the rights of both respondents in this proceeding. As stated in Allgood v. Bains, 247 Ala. 669, 675, 26 So.2d 98, 102:

"* * * No universal rule in regard to multifariousness can be laid down to cover all possible cases. It is largely a matter of discretion, and every case must, in a measure, be controlled by what is convenient and equitable under its own particular facts, subject to the recognized principles of equity jurisprudence. Ford v. Bor-

ders, 200 Ala. 70, 75 So. 398; City of Carbon Hill v. Merchants Bank & Trust Company, 237 Ala. 55, 185 So. 387. As was stated in Adams v. Jones, 68 Ala. 117, 119. 'And it is always proper to exercise this discretion in such manner as to discourage future litigation about the same subject-matter, and prevent a multiplicity of suits, and never so as to do plain violence to the maxim that courts of equity "delight to do justice, and not by halves."'

* * * * * *

"It is also well established that it is not necessary that all parties to the bill should have an interest in all of the matters in controversy but it is sufficient if each defendant has an interest in some of the matters involved and they are connected with the others. Littleton v. Littleton, supra (238 Ala. 40, 188 So. 902); Truss v. Miller, 116 Ala. 494, 22 So. 863."

In Stamey v. Fortner, 230 Ala. 204, 205, 160 So. 116, the rule is thus stated:

"It is well settled in this jurisdiction that it is not necessary that all the parties to the bill should have an interest in all the matters in controversy, but it is sufficient if each defendant has an interest in some of the matters involved, and they are connected with the others."

### Mutuality of the Contracts

The respondents contend that the contracts lack mutuality because no obligation is placed on the complainant to provide *any* work for them from which they could derive compensation; that the contracts firmly bind the respondents, while under paragraph 2 thereof it is expressly provided that "there shall be no fixed minimum or other provision with regard to the total number of hours that the employee shall be actively engaged." We have no difficulty in concluding that so long as the contracts remained wholly executory and unperformed, they lacked that mutuality of obligation essential to an enforceable contract. As stated in Alabama City,

G. & A. Ry. Co. v. Kyle, 202 Ala. 552, 558, 81 So. 54, 60:

"It is indispensable to the validity of a contract that it should be mutually obligatory upon both parties, or it will bind neither. * * *

"All contracts founded upon mutual promises between persons of full age must be obligatory upon both parties, so that each may have an action upon it, or neither will be bound. The whole doctrine rests, though, mainly upon the absence of a consideration to support the promise. * * *"

A similar doctrine is thus expressed in Iron Age Publishing Co. v. Western Union Telegraph Co., 83 Ala. 498, 509, 3 So. 449, 454:

"The general rule, to which, it is true, there are many exceptions, seems to be, that contracts, in order to be enforced by specific performance, must be mutual in obligation as well as in remedy. Mr. Pomeroy says, and such, we think, is the general rule, that 'it' is a familiar doctrine that if the right to the specific performance of a contract exists at all it must be mutual; the remedy must be alike attainable by both parties to the agreement.'—Pom. Cont. §§ 162–165. With some established exceptions, it may be stated that equity will decline to enforce a contract against a defendant where the case is of such a nature that the court has no power to compel the complainant to perform his part of it. * * *"

As indicated in the Kyle case, supra, a contract lacking in mutuality is unenforceable mainly because there is an absence of consideration moving from one party to the other. Whether there is sufficient consideration to give validity to contracts such as we have here depends upon the facts and circumstances in each particular case. It may be inferred from the allegations of paragraph 13 of the bill that the complainant did, in fact, provide respondents with work and did, in fact, pay them compensation therefor as prescribed in the contracts; but on demurrer such inferences are not warranted. As the bill now stands, it does not sufficiently show the passing to respondents of any consideration.

In this connection we observe that the test of mutuality is not to be applied as of the time when the promises are made, but more properly as of the time when one or the other of the promises is sought to be enforced. It may be stated as accepted doctrine that absence of inceptive mutuality constitutes no defense to the enforcement of an executed contract supported by a sufficient consideration.

[17] Our cases approve the principle that although an agreement might not be binding on both parties at the time of its execution, it may be made so by performance under it. In Pratt Consolidated Coal Company v. Short, 191 Ala. 378, 391, 68 So. 63, 67, it is thus stated:

"* * * If the party in whose favor a 'unilateral promise is made accept its performance, or do any act in recognition of its implied or intended, though unexpressed, consideration, this supplies the element of mutuality, and gives a right of action.' * * *"

See also Majestic Coal Co. v. Anderson, 203 Ala. 233, 234, 82 So. 483; Jones v. Lanier, 198 Ala. 363, 73 So. 535; Pullman Co. v. Meyer, 195 Ala. 397, 401, 70 So. 763; Davis v. Williams, 121 Ala. 542, 546, 25 So. 704.

The rule is stated in 12 Am.Jur., Contracts, § 114, P. 609, as follows:

"If a bilateral agreement, not originally binding on one of the parties, has been performed by him, so that the other party has actually received the promised benefit, the latter is bound to perform his promise. Where the defendant has received the consideration of an agreement, it is no answer for a breach of the same that the agreement did not bind the plaintiff. Moreover, the fact that a bilateral agreement was not binding while wholly executory because both parties were not bound is not controlling where the parties have acted under it during the entire period of its existence, but under such circumstances it cannot be questioned

and must to such extent control and measure the rights of such respective parties."

From what we have said it follows that the decree overruling the demurrer to the bill should be reversed, and that an order should be entered here sustaining the demurrer to the bill; and that the decree issuing the temporary injunction should be reversed and said injunction dissolved. It is so ordered. Complainant is allowed twenty days in which to amend her bill if she sees fit to do so and renew her application for an injunction upon the bill as amended. The cause is remanded to the Circuit Court for further disposition.

Reversed, rendered and remanded.

LIVINGSTON, C. J., and SIMPSON and CLAYTON, JJ., concur.