This appeal basically involves two questions:
 1. Can an appeal be taken from the grant of a permanent injunction in a case before final disposition of the entire case?
 2. Can a "non-competition" clause in an employment contract be enforced by an employer who at the time the contract was made had the intent to fire the employee as soon as it could find a replacement?
Appellees, Computer Servicenters, Inc., A. Derrill Crowe, Lamar M. Campbell, and Walter F. Scott filed this action on May 10, 1976, for injunctive relief to prevent appellants, Kenneth G. Robinson and K.G. Robinson and Associates from competing with Computer Servicenters, Inc. in violation of Non-Compete Agreements between Robinson and CSI. CSI also sought to have a subscription agreement in the employment contract specifically enforced.
Robinson had previously filed a derivative action on January 6, 1976, in the United States District Court for the Northern District of Alabama against CSI, its directors and chief executive officers, and Sterne, Agee Leach, Inc. The federal court action was still pending at the time of trial of this action. (C.A. No. 76-H-0012-S).
Robinson filed his answer in this state action and demanded a jury trial. He also amended his answer to allege a counterclaim, wherein he asked for damages for the alleged breach of, and fraud surrounding, the employment contract with CSI.
On September 16, 1976, the trial court entered its decree which is the subject of this appeal. The decree states that the court had "severed" Robinson's counterclaim pursuant to the provisions of Rule 42. The decree ordered that the subscription claim by CSI involved questions as to which the parties are entitled to a jury trial; that CSI was entitled to enforce by injunction the Non-Compete Agreement in a 1969 employment contract between the parties; that CSI was entitled to enforce an identical clause in a 1975 employment contract between the parties. The trial court concluded that Robinson had competed with CSI from the date of his termination, January 16, 1976, and ordered that he not compete with CSI for one year from the date of entry of the decree.
Robinson filed his appeal and filed a motion to stay the injunction pending appeal. CSI filed a motion to dismiss the appeal. On January 6, 1977, CSI filed a motion to strike Robinson's brief, or portions thereof, *Page 942 
and renewed its motion to dismiss the appeal.
Computer Servicenters, Inc. is a general data center organization engaged in the business of providing data processing services to customers. In January of 1969, employee Robinson contracted with a predecessor corporation to CSI that he would serve as the corporation's chief executive officer for two years. The contract was renewed automatically for two-year periods unless it was terminated in writing by either party at least 90 days prior to its expiration. In May of 1970, the predecessor corporation was merged into CSI and Robinson continued as president under the 1969 contract. In paragraph 8 of this contract, Robinson covenanted and agreed that he would not compete with CSI for a period of two years after the termination of his employment with it.
In November of 1974, Robinson gave CSI notice that he did not intend to renew his employment contract. Robinson testified that the contract expired in February, 1975. From February, 1975, to some time in June, 1975, Robinson served as president of CSI on a terminable at-will or month-to-month basis. In June of 1975, he entered into another employment contract with CSI which contained an identical non-compete agreement as had the 1969 contract. In September, 1975, CSI advised Robinson another person would become chief executive officer of CSI; Robinson was placed on a "leave of absence." On January 6, 1976, Robinson filed the federal court action previously mentioned against CSI and other defendants. In January, 1976, he was terminated by CSI.
A short time after his termination by CSI, in "about February" of 1976, Robinson entered into business for himself as Kenneth G. Robinson Associates. This enterprise was a consulting service and relates primarily to the utilization of computers and data processing equipment. In 1976, CSI performed primarily medical data processing services for medical groups, which related to medical billing for doctors. In connection with his "consulting" business, Robinson acted as sales representative for a firm that manufactured "mini" computers, which could be utilized as in-house computers to perform billing services, and could replace the services performed by computer service bureaus like CSI. There was some evidence that, as part of his new consulting business, Robinson or his associate presented the "mini" computer program to CSI customers in Birmingham, and, if accepted by them, the "mini" system would alter or replace any need for CSI's services. With respect to one CSI customer, Virginia Orthopedics, Robinson had negotiated a three-year contract between Virginia Orthopedics and CSI, on CSI's behalf, in August, 1975. However, after being terminated by CSI and entering business for himself, Robinson recommended an in-house system to Virginia Orthopedics — knowing that if they purchase it, their need for CSI's services would be eliminated. Robinson also recommended an in-house system to other CSI customers with the knowledge that if it was accepted, they would discontinue their relationship with CSI.
There was evidence that the in-house computer system sold by Robinson competes with CSI in the sense that if a customer accepted the in-house system, it would no longer have any need for the services of CSI.
 I
First, we address the question whether Rule 54 (b) ARCP has any application to an order granting a permanent injunction. We hold that it does not.
The time within which an appeal must be taken from an order sustaining, dissolving or discharging an injunction[1] and from an order granting or refusing a writ of injunction[2], has now been changed by Rule 4, ARAP, but the right to appeal is still governed by statute. *Page 943 
The notice of appeal from the order granting the permanent injunction was taken within 14 days as provided for in Rule 4, ARAP; therefore, the motion to dismiss the appeal is denied.
 II
The second issue is whether the trial judge should have issued an injunction against Robinson. We think not. Contracts restraining employment are looked upon with disfavor, because they tend not only to deprive the public of efficient service, but tend to impoverish the individual. Hill v. Rice, 259 Ala. 587, 67 So.2d 789 (1953). The courts will not specifically enforce, as of course, the naked terms of a negative covenant in a personal service contract restricting other employment, unless, supporting the affirmative promise, the employer has a substantial right unique in his business which it is the office of the court to protect, and the restriction laid upon the employee has a reasonable relevancy to that result, and imposes no undue hardship. Hill v. Rice, supra.
The testimony in this case shows that the directors of CSI, at the time they authorized the contract with Robinson which they seek to enforce, intended to dismiss him as soon as a replacement could be found.
In Hill v. Rice, this court said each particular contract must be tested by determining on the facts of the particularcase whether the restriction upon one party is greater than is reasonably necessary for the protection of the other party.
Testing the restrictive contract here under the particularfacts of this case, it is obvious that it would be inequitable and unreasonable to enforce a contract which the employer did not intend to keep.
In finding the restrictive contract unreasonable, we have considered the fact that the testimony shows that the directors intended to replace Robinson as soon as a replacement could be found even during the time of his employment under the 1969 contract. CSI claims that it can enforce the negative covenant of the 1969 contract even if it should fail in the 1975 agreement. Under the Hill v. Rice test, this argument is not persuasive, especially when viewed against the backdrop of theparticular facts of this case, as Hill v. Rice states every contract must be tested.
Furthermore, even though Robinson's new business venture could cause CSI to lose some of its clients, it does not necessarily follow that Robinson violated the non-compete clause. For example, a person years ago could have owned an ice-making business. An employee could have sold ice to many customers and could have signed a non-compete agreement. He leaves that employment voluntarily or involuntarily. Should he be enjoined from selling refrigeration equipment to businesses and homeowners because that would decrease the demand for ice? The answer is obvious. Robinson, as we understand his business, is attempting to sell a product that would surely eliminate the customer's future need for CSI service, but he is not engaged in the same service.
The record shows that because of advancements in data processing technique, many organizations could utilize in-house computers and would no longer have to contract out their data processing needs.
In view of the facts of this case, we find the trial court should not have granted the extraordinary injunctive relief. The judgment is reversed and the cause is remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, SHORES and BEATTY, JJ., concur.
[1] Title 7, § 757, Code.
[2] Title 7, § 1057, Code. *Page 944