This is an appeal from an order of the Circuit Court of Jefferson County granting summary judgment for the defendant. We affirm. *Page 378 
After voluntarily terminating his employment with his former employer, Birmingham Trust National Bank, plaintiff applied to that bank for sums of money to which he was entitled from an Employee's Profit Sharing Plan of which plaintiff was a participant. Although his own contributions were returned to him, the bank refused to pay plaintiff that amount of money which the bank itself had contributed to plaintiff's account. He brought this action to recover the employer's matching contribution. By amendment two additional plaintiffs were later added, individually and as a class action (these other defendants did not file notice of appeal and hence are not parties to this appeal).
Following the overruling of its motion to dismiss, the defendant bank filed an answer setting up as its defense a provision in the Employee's Profit Sharing Plan under which, it contended, plaintiff forfeited the bank's matching contribution by engaging in direct competition with his former employer. Motion for summary judgment was then made by defendant, based upon the pleadings, depositions of the three plaintiffs, and the affidavit of Steven D. Schepker; in due course this motion was granted on October 7, 1976.
It appears from the record and from the briefs that there was in existence during the plaintiffs' terms of employment with defendant and at the time of termination a profit-sharing plan containing forfeiture provisions. Before January 1, 1974, the applicable provision provided in part:
Section 6. Cancellation of Benefits
 Notwithstanding any other provisions of the Plan, in the event that any Participant or Former Participant, whether actively employed, terminated with vested benefits, or retired under the Plan, shall either (i) engage, or have engaged, in direct competition with an Employing Company, either individually or as an officer, director, agent, or employee of another person, firm, or corporation, (ii) disclose, or have disclosed or removed, or have removed, from the premises of an Employing Company information of a confidential nature or, (iii) misappropriate, or have misappropriated, funds or assets of an Employing Company, such Participant or Former Participant shall be entitled, if the Administrative Committee so determines, to receive pursuant to the Plan only his Employee Contributions; and the remainder of the Individual Account of such Participant or Former Participant shall constitute a Forfeiture and should be removed from his Individual Account and reallocated in the manner provided in Article V above.
An amended provision became effective on January 1, 1974:
Section 6. Cancellation of Benefits
 Notwithstanding any other provisions of the Plan, in the event that any Participant or Former Participant, whether actively employed, terminated with vested benefits, or retired under the Plan, shall either (i) engage, or have engaged, in direct competition with an Employing Company, either individually or as an officer, director, agent, or employee of another person, firm, or corporation within Jefferson County, Alabama, or in any other county in the State of Alabama, and the Administrative Committee, in its sole discretion, determines that such competition will cause, or is likely to cause, injury to the business and profits of such Employing Company, (ii) disclose, or have disclosed or removed, or have removed, from the premises of an Employing Company information of a confidential nature or, (iii) misappropriate, or have misappropriated, funds or assets of an Employing Company, such Participant or Former Participant shall be entitled to receive pursuant to the Plan only his Employee Contributions; and the remainder of the Individual Account of such Participant or Former Participant shall constitute a Forfeiture and should be removed from his Individual Account and reallocated in the manner provided in Article V above; . . .
The appellant invokes Title 9, § 22, Alabama Code, for the invalidity of the forfeiture provision of this Plan: *Page 379 
 Every contract by which any one is restrained from exercising a lawful profession, trade, or business of any kind, otherwise than is provided by the next two sections, is to that extent, void.
In brief he argues that the record does not show that plaintiff-employees were employed by a written contract; that the record is likewise silent on whether they ever read the pension plan agreements "before this Court;" and that the record does not show that the plaintiffs acquiesced or mutually agreed with their bank-employer to the "binding effect of the forfeiture clause. . . ." That reasoning appears inconsistent, for on the one hand appellant relies upon a contractual obligation of the bank to pay funds it contributed (nowhere is it suggested that the bank made a gift of its contributing share); otherwise there would be no need to invoke Title 9, § 22 which applies to contracts. On the other hand, appellant appears to maintain that there was no contract because the employees did not agree to the Plan, or at least with its forfeiture provision. If the employees did not agree to the Plan there would be no contract whatsoever, and their recovery would proceed upon a different theory, if any. If they did agree to the Plan, still the question of the bank's obligation to pay its matching share would depend upon the application of Title 9, § 22 and its exceptions delineated in Title 9, § 23:
 One who sells the good will of a business may agree with the buyer, and one who is employed as an agent, servant, or employee may agree with his employer, to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city, or part thereof, so long as the buyer or any person deriving title to the good will from him, and so long as such employer carries on a like business therein.
The record shows that the Plan provided that an eligible employee:
. . . shall participate . . . when he files with the Administrative Committee on a prescribed form such information as shall be required by the Administrative Committee, which shall include the Employee's acceptance of the terms and conditions of the Plan and his authorization to deduct Employee Contribution, if any are to be made by him.
. . . . .
. . . . .
 Each Eligible Employee, upon becoming a Participant, shall be conclusively deemed to have consented to all the terms and conditions of the Plan, as the same may be hereafter amended, and shall be bound thereby with the same force and effect as if he were a party thereto.
We are convinced that any argument to the effect that the appellant did not contract, or did not acquiesce, in the Plan is untenable. The record discloses an acknowledgement of receipt of "Request for Participation and Authorization for Employee Contributions," "Designation of Beneficiary" and "Elective Cash Payment" forms signed "G M Courington," and dated November 8, 1966. The "Request . ." form contained three blank spaces for dates, one for a specification of the percentage of basic compensation to be deducted, and one for the employee's signature:
 In consideration of my employment and of the undertakings of my employer as set forth in the Birmingham Trust National Bank Employees' Profit Sharing Plan and Trust Agreement, dated August 8, 1966 and effective as of January 1, 1966, I hereby apply for participation in and with respect to the said plan and trust agreement and hereby accept and assent to and agree to be bound by all of the provisions of the said plan and trust agreement and of all amendments thereto, whenever made.
 I was born on the 4th day of Sept., 1936. The date upon which I was employed by the Birmingham Trust National Bank or the Bank for Savings and Trusts (as the case may be), and since which time I have been in continuous service, as defined in said profit sharing plan and trust agreement, was March 1st, *Page 380 
1957. If this statement of my birth date or my employment by the Birmingham Trust National Bank or the Bank for Savings and Trusts is incorrect, I agree that all my interest under said profit sharing plan and trust agreement shall be determined according to the correct date.
 Under the provisions of Article IV, Section 1, of the said profit sharing plan and trust agreement, I hereby authorize the Bank to deduct 4% of my basic compensation once each month effective January 1, 1967. I understand and agree that the first of such deductions shall be made January 31, 1967 and on the last day of each month thereafter. This authorization shall continue in effect until rescinded or changed by me in writing, pursuant to the provisions of Article IV, Section 1, of said profit sharing plan and trust agreement.
 I acknowledge receipt of a copy of the Birmingham Trust Employees' Profit Sharing Plan and Trust Agreement.
WITNESS my hand and seal this 8th day of Nov, 1966.
As the form shows, the blanks were executed, the signature being "G M Courington." One who has executed a written contract in ignorance of its contents cannot set up his ignorance to avoid the obligation in the absence of fraud or misrepresentation. Grady v. Williams, 260 Ala. 285,70 So.2d 267 (1953). An Election of Cash Payments under the Plan, dated November 8, 1966, was signed "G M Courington." A change of beneficiary under the Plan was executed on October 10, 1967 by "G M Courington." An option to change the percentage of contributions was executed on October 31, 1969 by "G M Courington," and another executed on November 3, 1970 by "G M Courington." Although the appellant stated in his deposition that he had not read the agreement and thus did not have personal knowledge of the "competition" clause, he did state that there were discussions among employees about "who is a competitor and who is not a competitor," because "some people would get paid their profit sharings and some wouldn't." We believe that this evidence, taken as a whole, establishes acquiescence in the Plan, if not outright agreement, on the part of appellant.
In Williston on Contracts, § 98 (Rev. ed.), it is stated:
. . . [t]he whole objective theory of contracts, as distinguished from the subjective theory, is based on analogy to estoppel. This is apparent whenever a person is held bound by a contract because of his manifestations when his manifestations are contrary to his actual state of mind. . . .
Acquiescence is a form of estoppel, Bankers' Trust Co. v.Rood, 211 Iowa 289, 233 N.W. 794 (1930), and is applicable when there is some element of neglect. City of Lafayette v. Keen,113 Ind. App. 552, 48 N.E.2d 63 (1943). Even if appellant had not actually read the Plan (and his executed "Request for Participation" expressly states: "I acknowledge receipt of a copy of the Birmingham Trust Employees' Profit Sharing Plan and Trust Agreement"), his acquiescence was manifested by the availability to him of all the material facts concerning it.Colburn v. Mid-State Homes, Inc., 289 Ala. 255, 266 So.2d 865
(1972).
Nothing in the record suggests that the bank would have been obliged to make contributions to the Plan without the participation of the appellant, and his conduct was certainly calculated to induce the belief that he understood the Plan and agreed to participate in it.
In 17 C.J.S. Contracts § 41 at p. 672, it is stated:
. . . If an offer is made by delivering to another a paper containing the terms of a proposed contract, and the paper is accepted, the acceptor is bound by its terms; . . . and, . . . this is true as a rule whether or not he reads the paper, . . .
Cf. Denson v. Kirkpatrick Drilling Co., 225 Ala. 473,144 So. 86 (1932).
The next question is whether the forfeiture provision of the Plan is rendered invalid under Title 9, §§ 22 and 23. The appellant testified by deposition that he left *Page 381 
the employ of Birmingham Trust National Bank on October 14, 1972 to accept a job with Central Bank, and that his new and old employers solicit the same customers and do business in the same business community.
Forfeiture-by-competition clauses appear to be widely used in the business community, and in those cases in which their validity has been challenged, the Courts have, with few exceptions, upheld them. Such a case was Golden v. KentileFloors, Inc., 512 F.2d 838 (5th Cir. 1975). There, following a voluntary resignation and employment with a competitor of his former employer, the employee demanded benefits from the latter which had been denied by the profit-sharing committee. At issue was that part of the Sherman Act which invalidates "every contract . . . in restraint of trade. . . ." The Court noted that not every restraint on trade was prohibited:
 [t]he authorities . . . generally draw a clear and obvious distinction between restraints on competitive employment in employment contracts and in pension plans. The strong weight of authority holds that forfeitures for engaging in subsequent competitive employment, included in pension retirement plans, are valid, even though unrestricted in time or geography. The reasoning behind this conclusion is that the forfeiture, unlike the restraint included in the employment contract, is not a prohibition on the employee's engaging in competitive work but is merely a denial of the right to participate in the retirement plan if he does so engage. (Emphasis Supplied.)
The Court cited as authority Brown Stove Works, Inc. v. Kimsey,119 Ga. App. 453, 167 S.E.2d 693 (1969), a similar case which involved a non-contributing profit-sharing plan. That case also drew a distinction between a contract which placed a restraint upon the right to enter into a competitive activity as a means of earning a livelihood, and an agreement which made refraining from competitive activity a condition precedent to participation in a profit-sharing plan. The Georgia court saw no restraint of trade in the presence of a contract restriction which did not "preclude the employee from engaging in competitive activity, but simply provides for the loss of rights or privileges if he does so. . . ."
Whether such provisions are reasonable restrictions was explored in the Golden opinion, supra, at 846:
. . . [t]he forfeiture was designed . . . to protect the company and other member employees against competition from former employees who leave the company, voluntarily engage in competitive employment, and yet simultaneously seek to obtain deferred compensation from a trust established and funded by Kentile for the benefit of personnel whom Kentile would reward for company loyalty and consequent company success. . . .
. . . . .
 . . . Kentile sought to insure that the plaintiff would not freely compete against it and at the same time obtain resources which the company, in its judgment, might utilize more advantageously in favor of other employees. . . .
. . . . .
Similar reasoning was employed in Miller v. Associated PensionTrusts, 396 F. Supp. 907 (E.D.Mo. 1975), in which the denial of profit-sharing benefits to a former employee who competed was upheld:
. . . [s]uch a provision is designed to protect the integrity of the plan, and is therefore valid since any competitive actions on the part of a former employee would in all probability have a detrimental effect upon the profit sharing aspect of the plan. . . . The effect of the plan's provision is not that of a restrictive covenant which would bar the employee from earning a living but rather provides him with a choice as to whether he wishes to compete with his former employer at the expense of losing his accrued benefits. . . .
The second federal circuit recently ruled that a forfeiture-for-competition clause constituted a valid liquidated damages provision *Page 382 
for the breach of the employees' covenant not to compete.USAchem, Inc. v. Goldstein, 512 F.2d 163 (2 Cir. 1975), citingBradford v. New York Times Co., 501 F.2d 51 (2 Cir. 1974). InBradford, an "Incentive Compensation Plan" provided that the participant, in consideration of payments made to him (based upon units accrued during employment), would not compete. The participant entered into a non-competition agreement under the plan and when he later joined a competitive enterprise, his former employer invoked a provision allowing a discontinuance of benefits. The Court did not find this provision unreasonable, viewing it as a provision for liquidated damages, and made these additional observations:
. . . Bradford's resignation did not terminate his employer's obligations. He was to receive annual installments of stock for a ten-year period so long as he abided by his promise not to compete. There was a continuing consideration being paid for his loyalty and good will. While this was a restraint upon his liberty, it can hardly be described as unreasonable. Had he persevered, his reward would have been great indeed. . . . Here, Bradford paid nothing but merely disabled himself from collecting the continuing payments made by the Times. . . .
The cases which concern covenants not to compete are, of course, distinguishable from cases, like the instant case, which involve only provisions for forfeiture in the event of competition. Their similarities lie in the refusal to find any restraint of trade in either type.
In Barr v. Sun Life Assurance Company of Canada, 146 Fla. 55,200 So. 240 (1941), a forfeiture-for-competition provision applied to renewal premiums on life insurance policies the former employee had sold during his employment, and was invoked when he obtained employment with a competing company. Distinguishing such an agreement from one in restraint of trade the court stated:
. . . There is nothing in this contract which precludes the employee from accepting other like employment from another employer after the termination of his contract with Sun Life Assurance Company of Canada. Therefore, it is not a contract in restraint of trade . . . Nor did this contract deprive [him of] the privilege of engaging in that vocation and work for which he was trained and which he was qualified to perform. The provision of the contract simply recognized the fact that the employer was entitled to have the good will and co-operation of the employee not only as long as the employee was employed by that employer, but for the full period of ten years during which he would receive commissions on renewal premiums and that the employee should be bound not to place himself in a position where he could not be reasonably expected to render that service. . . .
In Flammer v. Patton, Fla., 245 So.2d 854 (1971), the Florida court construed a similar forfeiture provision in the non-contributory pension plan of a retired finance company employee who later accepted employment as a bank loan officer. Although that court held the restriction in the forfeiture provision unreasonable because of its unlimited duration, the court did not void the entire forfeiture provision.
The distinction in the type of contracts is meaningful when we apply it to our own Title 9, §§ 22, 23 and 24, for by those enactments a contract "by which any one is restrained from exercising a lawful . . business . . . is void," except that (1) the seller and buyer of the good will of a business may agree "to refrain from carrying on . . . a similar business so long as the buyer . . . carries on a like business . . ."; (2) "one who is employed as an agent, servant, or employee may agree with his employer to refrain . . . from soliciting old customers of such employer within a specified county, city, or part thereof, so long as . . . such employer carries on a like business therein . . ." and (3) partners may *Page 383 
"agree that none of them will carry on a similar business. . . ."
In interpreting these sections our Court, like many others, has applied a test of reasonableness to the restrictions thus allowed, and has looked to the facts of the particular case to determine whether the restriction against entry into a competing business is reasonably necessary for the other's protection. Mason Corporation v. Kennedy, 286 Ala. 639,244 So.2d 585 (1971); White Dairy Company, Inc. v. Davidson,283 Ala. 63, 214 So.2d 416 (1968); Hill v. Rice, 259 Ala. 587,67 So.2d 789 (1953). Much of the judicial scrutiny of such an employment restraint is based upon a recognition that it
. . . [t]ends not only to deprive the public of efficient service, but to impoverish the individual and make him a public charge at the expense of the taxpayer. . . . Modern thought, . . . would perhaps place the emphasis on the plight of the individual, who might be needlessly pauperized while ready, able and willing to work at his usual occupation for the support and independence of himself and his family. [Hill v. Rice, supra, at 593, 67 So.2d at 795, quoting from Kadis v. Britt, 224 N.C. 154, 29 S.E.2d 543].
We do not, however, apprehend the existence of any such risk in the situation before us as it clearly does not involve a restriction upon the employee's entry into a competitive endeavor. Here, the former employer is not prevented from earning a living. His accrued profit-sharing benefits contributed by the employer are continued should he leave the employer for a different and non-competing undertaking. It is only when he competes that those contributions of the employer are forfeited. In the words of Kentile, supra, the defendant
. . . sought to insure that the plaintiff would not freely compete against it and at the same time obtain resources which the company . . . might utilize more advantageously in favor of other employees. . . .
If the participating employee wishes to leave his employment, he is free to do so, and if he leaves for another position, he loses none of his accrued benefits, unless by electing to enter a competitive enterprise he makes the choice to lose that portion contributed by his former employer who must continue to offset the effect of his competition with it in order to continue the Plan for the benefit of those who remain.
Thus, we find that the agreement before us does not fall within the type proscribed by the "restraint of trade" provisions of our Title 9. We pretermit any discussion of the effect upon this contract of fraud or duress since no such issue is raised. We note also that the parties have made no issue of the fact of competition between the former and present bank employees.
Plaintiff-appellant has cited us to California authority which has held invalid forfeiture-by-competition clauses in retirement benefits as contravening that state's statutory prohibition against contracts in restraint of trade. Aside from the fact that the California statutes, unlike our own, contain no exceptions such as those found in §§ 22-24 of Title 9,Alabama Code, we do not agree with the reasoning of that distinguished court that the employee's being less free to engage in a lawful business causes the agreement to fall within the classification of those in restraint of trade.
Finally, in Mason, supra, cited by the plaintiff, our Court held that evidence supported the trial court's findings that the agreement not to enter competitive employment was unreasonable. In reviewing that evidence we observed that the record did not "appear to indicate that Kennedy [the employee] received any additional compensation or benefits for signing the [non-competition] agreement," and we suggested that a second non-competition agreement made after termination likewise might not have been supported by consideration. We have earlier expressed ourselves on the contractual aspect of the instant case. Mason did not involve the type of agreement before us here.
The action of the trial court in granting summary judgment having been proper, the *Page 384 
judgment is due to be affirmed, and it is so ordered.
AFFIRMED.
TORBERT, C.J., and MADDOX, FAULKNER and SHORES, JJ., concur.